Libby Snider
KS S.C. #19457
Legal Counsel
Kansas Department of Corrections
714 SW Jackson Street, Suite 300
Topeka, KS 66603
(785)746-7499
Libby.Snider@ks.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| MARTIN ARNOLD RILEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case no. 22-3185-JWL-JPO |
| | ) | |
| DEPUTY WARDEN (FNU) SKIDMORE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT IN "MARTINEZ VS AARON" INVESTIGATION**
**CIVIL RIGHTS COMPLAINT**

On August 31, 2022, Plaintiff Martin Riley filed a *pro se* civil rights action pursuant to 42

U.S.C. §1983 in the United States District Court for the District of Kansas.  (Doc. 1).  At all

relevant times, Plaintiff was an inmate incarcerated in the custody of the Secretary of Corrections

of the State of Kansas and was housed at the Lansing Correctional Facility (LCF).

On September 6, 2022, the Court issued an order directing the preparation of a *Martinez* report.

(Doc. 7).

**SUMMARY OF ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

Plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated when an

officer of the Lansing Correctional Facility (LCF) intentionally slammed Plaintiff's foot in his

cell door, and subsequently, multiple LCF staff denied Plaintiff medical attention, refused to investigate the alleged incident, failed to process Plaintiff's grievance, and permitted the officer to continue working in Plaintiff's living unit.  (Doc. 1, pp. 5-17).

Plaintiff requests the following relief:  $200,000.00 for Pain and Suffering; $300,000.00 for Irreparable Nerve Damage; $150,000.00 for Mental and Emotional Anguish; $500,000.00 for Cruel and unusual Punishment; $100,000.00 for Denial of Medical Attention; $20,000.00 for Threats/Intimidation; and $300,000.00 for Acts of Retaliation.  (Doc. 1, pp. 20-21).

According to his complaint, on December 16, 2021, between 3:15 a.m. and 5:30 a.m., Defendant Hopkins deliberately slammed Plaintiff's foot in his cell door several times without cause.  (Doc. 1, p.5).  Plaintiff states that he pressed the emergency button in his cell several times to request medical attention for his foot, but the emergency signal was turned off each time by Defendant Hopkins.  (Doc. 1, p. 7).  Plaintiff alleges that, after shutting Plaintiff's cell door, Defendant Hopkins turned and stated, "F**k you.  Too bad, deal with it."  (Doc. 1, p. 7).

Plaintiff states that he filed a grievance against Defendant Hopkins, through Defendant Potter, on December 16, 2021.  (Doc. 1, p. 8).  He states that, on December 19, 2021, he received a disciplinary report written by Defendant Hopkins, in retaliation for the grievance.  (Doc. 1, p. 9).  Plaintiff argues that the disciplinary report was not written on the date of the alleged incident, as evidenced by the fact that it was handwritten, rather than being computer-generated and time-stamped.  (Doc. 1, p. 9).

Plaintiff alleges that Defendant Hopkins violated his 8th Amendment right against cruel and unusual punishment by the alleged use of physical force, by deliberate indifference to Plaintiff's medical needs, and by issuing a disciplinary report in retaliation for Plaintiff's grievance against him.  (Doc. 1, pp. 11-12).

According to his Complaint, Plaintiff went to the Captain's office at 9:00 a.m., after Defendant Hopkins's shift ended, and reported the alleged incident to Defendants East, Brown, and Rasmussen.  (Doc. 1, p. 7).  He states that he asked to file a formal complaint against Defendant Hopkins, that he showed the Defendants his injured foot and asked them to take photographs of it, and that he requested medical attention.  (Doc. 1, p. 7-8).  He states that Defendants East, Brown, and Rasmussen reviewed security video footage of the alleged incident, refused him medical attention, and told him to return to his cell house.  (Doc. 1, p. 8).

Plaintiff asserts that Defendants East, Brown, and Rasmussen violated his 8th Amendment right against cruel and unusual punishment by deliberate indifference to Plaintiff's medical needs, and his 14th Amendment right to equal protection by failing to photograph his foot and investigate his complaint.  (Doc. 1, pp. 12-15).

Plaintiff alleges that he informed Defendant Potter of the incident at around 9:15 a.m. on December 16, 2021, and he showed her his foot and asked her to document his report and notify Defendant Gift in the Enforcement, Apprehensions and Investigations (EAI) unit.  (Doc. 1, p. 8).  He states that he told Defendant Potter that he feared for his life, and he filed a grievance against Defendant Hopkins.  (Doc. 1, p. 8)  Plaintiff alleges that he filed a complaint against Defendant Hopkins on December 20, 2021, asking Defendant Potter to assist in removing Defendant Hopkins from working in Plaintiff's living unit.  (Doc. 1., p, 16).  He states that Defendant Hopkins harassed him at his work assignment on March 17, 2022, and he reported it to Defendant Potter and "Ms. William" from "Mental Health," and expressed his fear and paranoia to Defendant Potter, but she showed no interest in providing any assistance.  (Doc. 1, p. 17).  Plaintiff states that Defendant Potter refused to take photographs and did not process the grievance or remove Defendant Hopkins from Plaintiff's cell house.  (Doc. 1, pp. 8-9).

Plaintiff asserts that Defendant Potter violated his 8th Amendment rights through deliberate indifference to his serious medical needs, causing him mental anguish, and his 14th Amendment right to equal protection by failing to protect him or investigate.  (Doc. 1, pp. 16-17)

According to his Complaint, Plaintiff wrote to Defendant Gift to ask E.A.I. to photograph his injury and investigate the alleged incident.  (Doc. 1, pp. 9, 15).  According to the Complaint, Defendant Gift responded that, unless Plaintiff hired an attorney, no investigation would take place and Plaintiff would not be interviewed.  (Doc. 1, pp. 9, 15)

Plaintiff asserts that Defendant Gift violated his 8th Amendment rights through deliberate indifference to serious medical need, and his 14th Amendment right to Equal Protection by failure to protect or investigate.  (Doc. 1., p. 15)

Plaintiff states that he was "finally allowed medical attention" on December 20, 2021, and his injury was severe enough that he was issued crutches and a walking cane.  (Doc. 1, p. 8) He states that he was prescribed pain medication by "Dr. Joe and Dr. Wilson," which he was taking at the time of writing the Complaint, as well as wearing an air brace.  (Doc. 1, p. 9). Plaintiff states that, on December 20, 2021, he was told by Nurse Amber and Dr. Wilson to "go have injury reported and documented and have photos taken of injured foot."  (Doc. 1, p. 15). He states that he met with Lt. Lee and SORT Team leader Hoover, and SORT Team Leader Hoover walked Plaintiff from the clinic to the Captain's Office and photographed Plaintiff's foot, stating that the photographs would be sent to the E.A.I. unit.  (Doc. 1, p. 16)

## INVESTIGATION

Plaintiff's current incarceration began on December 29, 2010, at the El Dorado Correctional Facility (EDCF), and he was transferred to the Lansing Correctional Facility on December 31, 2015, where he continued to be housed at the time of the alleged incident.

(Exhibit 1).  On May 24, 2022, he was transferred to the El Dorado Correctional Facility (EDCF), where he resides at the time of this investigation.  (Exhibit 1).

## GRIEVANCES/CLAIMS

Plaintiff alleges that he submitted a grievance against Defendant Hopkins to Defendant Potter on December 16, 2021.  (Doc. 1, p. 8).  He also alleges that Defendant Hopkins subsequently retaliated against him because of the grievance.  (Doc. 1, p. 9).  Defendant Hopkins did not recall any grievance concerning the incident.  (Exhibit 6, p.1).

LCF Property Claims/Grievance Officer Kincaid identified only one claim submitted by Plaintiff, which was a property claim concerning damage to Plaintiff's music player.  (Exhibit 2).  The claim was returned to Plaintiff unnumbered and unprocessed because it was not timely filed.  (Exhibits 2, 3).

### DISCIPLINARY CASE

On December 16, 2021, Plaintiff was charged with Disobeying Orders in violation of K.A.R. 44-12-304, and Interference with Cell operations, in violation of K.A.R. 44-12-504 in LCF Disciplinary Case No. 2261.  (Exhibit 4, p.4).

According to the Disciplinary Report, at approximately 3:15 a.m., Plaintiff used the call button, and the reporting officer, Defendant Hopkins, went to Plaintiff's cell.  (Exhibit 4, p.4).  Plaintiff said, "let me out for work in the kitchen," and as Defendant Hopkins opened the cell door, Plaintiff aggressively approached him, pointing his finger, and saying, "Why the [f**k] didn't you wake me up for work?" (Exhibit 4, p.4).  Defendant Hopkins told him that he did not do wake up calls and pointed out that Plaintiff had an alarm clock for that.  (Exhibit 4, p.4).  Plaintiff became very loud and demanded that Defendant Hopkins wake him.  (Exhibit 4, p.4).  Defendant Hopkins told Plaintiff to return to his cell, and he repeated the order two more times

before Plaintiff complied.  (Exhibit 4, p.4).  As he went into the cell, Plaintiff placed his foot in the way of the cell door, preventing it from closing.  (Exhibit 4, p.4).  Defendant Hopkins reported, "I had to use a little force on the cell door to get it closed."  (Exhibit 4, p.4).

Plaintiff pled not guilty to both charges, and a disciplinary hearing was held on January 1s, 2022. (Exhibit 4, p.1).  Plaintiff did not request any witnesses, and he did not question the reporting officer.  (Exhibit 4, p.7).  Defendant Hopkins testified that he gave an order to Plaintiff that was not complied with until the fourth time it was given, and Plaintiff intentionally stuck his foot in the door to prevent it from closing.  (Exhibit 4, p.7).  The hearing officer reviewed security video of the incident and determined:

> At 03:16.48 CSI Hopkins does approach the door of cell B5-109.  After CSI Hopkins opens the cell door you can tell that he has having a conversation with an inmate inside the cell.  At 03:16.58you can see inmate Riley #52926 exit his cell and continue to have a conversation with the R/O.  At 03:17.00 it appears that CSI Hopkins gives an order to inmate Riley as he points towards the location of B5-109.  After the initial order is given to inmate Riley he continues to try and talk to the R/O.  At 03:17.20 R/O appears to give another order as he gestures towards his inmate Riley's cell again.  At 03:17.28 R/O attempts to close the door to Bg-109 and cannot get it to shut as if something is blocking the door from closing.  After applying a little more pressure to the door, it finally secures.  Inmate Riley is advised of video findings.

(Exhibit 4, p.8).  The hearing officer found Plaintiff guilty of both charges.  (Exhibit 4, p.8).

## MEDICAL RECORDS

Medical records indicate that Plaintiff had a Nurse Visit on December 17, 2021, at 12:10 PM, based on a sick call he submitted.  (Exhibit 5, p.1).  The record includes the following notation: "Statement of complaint (in patient's words):  My foot was shut in door this morning and there is a sharp pain on side of foot."  (Exhibit 5, p.1).  Plaintiff reported constant burning shooting pain in his left foot, with onset of December 16, 2021.  (Exhibit 5, p.2).  X-rays were ordered, and he was given an ace bandage.  (Exhibit 5, p.4).  The X-ray results were entered on December 20, 2021, and findings indicated:

The metatarsals and toes show no evidence for acute fracture or focal bone lesion. There is spurring at the base of the fifth metatarsal.
There is no periarticular erosion.  Joint spaces are well maintained.
The soft tissues are unremarkable.  The tarsal bones are intact.
The calcaneus is unremarkable.

IMPRESSION:
No fracture.  Normal joint spaces.  There is spurring at the base of the fifth metatarsal.

(Exhibit 5, p.6).

Plaintiff had a follow-up Nurse Visit on December 21, 2021, where he stated that he had been trying to move around on a fractured foot since 12-16-20, and "on 12/17/21 I seen a nurse and she informed me of the seriousness of my injured foot and informed me that I will be put on list for cat scan for foot.  I need assistance right now please."  (Exhibit 5, p.7).  He also stated, "I want a paper train, you know what I mean," and he indicated that he did not need anymore medication at that time.  (Exhibit 5, p. 10).

On December 23, 2021, Plaintiff had a Provider Visit, in which he reported that he had persistent pain and a "swollen spot" of the top of his left foot, that his foot went numb when putting pressure on it, and that he had been using an ACE wrap and a crutch and treating pain with ibuprofen.  (Exhibit 5, p.11).  Physical examination included a finding of a bone spur noted near the base of the fifth metatarsal, with tenderness on palpation and old bruising noted over the bone spur.  (Exhibit 5, p.13).  The providers comments stated, "Reviewed radiograph of left foot with SMD, no evidence of old or acute fracture."  Plaintiff was advised to continue use of the ACE wrap for support and use ice for discomfort, elevate his foot when resting, stop ibuprofen and start Meloxicam with food, and follow up in two weeks if there was no improvement.  (Exhibit 5, p.13).

At a Provider visit on January 13, 2022, he was seen for continue pain in his foot. (Exhibit 5, p.22).    The record states, "He was noted to have a bone spur on base of 5th mt where he has most of his pain.  He was recently given an ankle brace which he states helps the pain." (Exhibit 5, p.22).  The provider plan called for, "continue medication for pain, foot brace and return as needed."  (Exhibit 5, p.23).

On February 9, 2022, Plaintiff was seen by a Behavioral Health provider, where he reported issues of filing a grievance against an officer for a prior assault, and the OIC continued to work in B building, creating distress for him.  (Exhibit 5, p.36).  The record states, "Ct acknowledges that no direct threats or issues have been directly made; Ct continues to focus on possibilities and perception that OIC should not be working around him."  (Exhibit 5, p.36).

Plaintiff had a provider visit on February 11, 2022, to discuss his foot pain.  (Exhibit 5, p.37).    Provider notes state, "He is using a wore out Croc slipper that is wore out and the sole of the shoe has a hole and is thinned out from excessive wear.  His most pain is in ball of foot but he also has pain in lateral aspect. (Exhibit 5, p.38).  The Provider Plan stated, 'I believe the pain in the bottom of foot is due to the wore out Croc that he is wearing as there is a large hole and severe thinning of the sole.  He basically is walking on concrete.  He continues to complain of pain over the 5th MT base.  Radiographs reveled only spurring over MT base."  (Exhibit 5, p.39). Plaintiff was advised to dispose of the shoe, and inserts were ordered for extra padding to wear in tennis shoes.  (Exhibit 5, p.39).  It was noted that Plaintiff was wearing an ankle brace and said it helped with pain in the lateral foot.  (Exhibit 5, p.39).

At a Behavioral Health consultation on March 22, 2022, Plaintiff reported "perceived harassment on behalf of an officer, with the last incident reportedly occurring on 3/17.  This has reportedly been going on for months and Ct claims lack of response from staff in addressing.  Ct

relates the need to periodically 'vent' to BH and also wants his issues documented." (Exhibit 5, p.49). The Assessment notes indicated, "Anxiety is significant and improved. … Depression is significant and improved." (Exhibit 5, p.49).

On April 27, 2022, Plaintiff was seen for a Health Assessment, and there does not appear to be any mention of issues with his foot. (Exhibit 5, pp. 60-64). Physical Exam findings included, "Musculoskeletal: Normal: Visual overview of all four extremities is normal." (Exhibit 5, p.63).

## WITNESS STATEMENTS

### Property Claims/Grievance Officer CSI Scott Kincaid

CSI Kincaid identified one Property Claim filed by Plaintiff concerning the alleged incident. (Exhibit 2). On or about January 8, 2022, Plaintiff filed a property claim alleging that his Mp3 player was damaged in the incident. (Exhibit 2). CSI Kincaid located a copy of a memo sent to Plaintiff on January 26, 2022, explaining that the claim was being returned to him unanswered, because it was filed outside of the fifteen working days allowed for property claims under K.A.R. 44-16-102. (Exhibit 2). CSI Kincaid provided a copy of the memo, but no copy of the claim was retained, because the claim was not processed. (Exhibit 2). CSI Kincaid did recall that the subject of the claim was an Mp3 player, and he explained that, if personal injury had been alleged, the claimant would have been required to designate the claim as a personal injury claim, rather than a property claim. (Exhibit 2). In addition, because the time limit for personal injury claims is ten days, rather than fifteen for property claims, he would have cited the shorter timeframe in his memo if personal injury had been alleged. (Exhibit 2).

**Eric Hopkins**

Defendant Hopkins states that he let Plaintiff out of his cell to attend his job in the kitchen, and Plaintiff immediately started to curse at him and make demands.  (Exhibit 6, p.1). Defendant Hopkins told him multiple times to calm himself, but Plaintiff got louder and stated that he would "take care of [Hopkins] in [his] way then."  (Exhibit 6, p.1).  Concluding that Plaintiff was too agitated to be sent to the kitchen area, Defendant Hopkins directed him to lock back up, and Plaintiff refused more than once.  (Exhibit 6, p.1).  Defendant Hopkins reports that Plaintiff never asked him for medical assistance for any reason, and he was unaware of any grievance concerning the incident.  (Exhibit 6, p.1).  He stated that he did write a disciplinary report against Plaintiff for threatening and disobeying, but he was unaware of any other reports filed.  (Exhibit 6, p.2).

**Major East**

Defendant East states that he had not been appointed Major at the time of the alleged incident, but was the SORT commander, and he did not supervise Defendant Hopkins.  (Exhibit 7, p.1).  He states that plaintiff spoke to Defendant Rasmussen, and the information was relayed to Defendant Brown, who was the Shift Commander, and the video was reviewed.  (Exhibit 7, p.1).  According to Defendant East, security video is retained for only ninety days, but he recalled viewing the video at the time, and Plaintiff's claims were not substantiated.  (Exhibit 7, p.1).  Defendant East states that Plaintiff did try to put his foot in the foot in the door at the last minute, but it did not appear that the door was shut on Plaintiff, but was closed in a soft, non-dramatic way.  (Exhibit 7, p.1).  In an email on December 20, 2021, at 11:18 a.m., Defendant East advised Captain Dennis Kivley that Plaintiff had reported an incident, but based on his review of the video, "Officer Hopkins went to shut the door and it appears inmate Riley makes

an attempt to stop the door.  Any injuries that were sustained by Mr. Riley were due to his own resistance." (Exhibit 7, p.2).

**E.A.I. Gift**

Defendant Gift states that he was contacted on August 23, 2022, by KDOC Civil Rights Manager Marcelle Chmidling, regarding a letter sent from Plaintiff. (Exhibit 8, p.1). Defendant Gift responded on the same day with a copy of the disciplinary report written by Defendant Hopkins on the date of the incident, and stated that he was unable, due to technical issues, to determine whether a Use of Force Report was available. (Exhibit 4; 8, p.1). Defendant Gift reported that Ms. Chmidling contacted Defendant East, and Defendant East advised her that he had searched the database and did not find a Use of Force Report. (Exhibit 8, p.1). Defendant Gift also noted that, according to the Disciplinary Record for DR 2261, the disciplinary hearing officer had reviewed the video of the incident. (Exhibit 4; 8, p.1) Defendant Gift noted that LCF Property Claims/Grievance Officer CSI Scott Kincaid also responded on the same day. (Exhibit 8, pp.1-2). Mr. Kincaid advised that Plaintiff had not filed anything at LCF prior to being transferred to the El Dorado Correctional Facility (EDCF). (Exhibit 8, p.1). Mr. Kincaid recalled Plaintiff had used crutches at one time while working in the kitchen, but he was not aware of the reason. (Exhibit 8, p.1).

Regarding Plaintiff's allegation that Defendant Gift refused to investigate the incident, Defendant Gift stated that the LCF EAI office does not typically review Use-of-Force incidents unless directed to do so by LCF Executive staff or KDOC Central Office executive staff, and upon reviewing his stored emails, he found no such direction or instruction. (Exhibit 8, p.2).

Defendant Gift located three photographs of Plaintiff's foot and explained that, when photographs are taken of residents by line staff and not investigators, the photographs are

forwarded to the Major's office rather than the EAI Unit, and the EAI Unit does not review them unless they receive a specific inquiry from Executive staff or they are actively investigating the reason for the photographs.  (Exhibit 8, p.2; 9).

**Deputy Warden Skidmore**

Plaintiff makes no specific allegations concerning Defendant Skidmore.  Defendant Skidmore did not recall any communication in regard to Plaintiff, and he found no stored email regarding the alleged incident.  (Exhibit 10, p.1).  Defendant Skidmore asked LCF Property Claims/Grievance Officer CSI Scott Kincaid to provide any grievances or property claims regarding the incident, and the only relevant filing identified was a property claim for a music player that Plaintiff alleged was damaged in the incident.  (Exhibit 10, p.1).  Defendant Skidmore provided a copy of the claim denial, but he noted that there was no copy of Plaintiff's claim, because it was denied and returned to him unprocessed because it was not timely filed.  (Exhibit 10, p.1).

## CONCLUSION

Plaintiff alleges that, while housed at the Lansing Correctional Facility, Defendant Hopkins slammed Plaintiff's foot in his cell door, and refused to Plaintiff's requests for medical attention.  He alleges that this was reported to multiple staff members, and they refused to intervene, despite viewing the incident on security video.  He states that he was not allowed to get medical attention until December 20, 2021, and that he suffered fear and paranoia from the alleged incident.

Defendant Hopkins reports that Plaintiff was ordered back into his cell after becoming agitated, and Plaintiff intentionally stuck his foot into the cell door to prevent its closing.  The disciplinary hearing officer viewed security video and determined this to be true.  Major East

reviewed the security video at the time and described the door closing in a soft, non-dramatic way.  Though Plaintiff claims to have been denied medical attention until December 20, his medical records indicate that he was seen for the alleged injury on December 17, 2021.  No fracture was found, but Plaintiff did have a bone spur, and he received ongoing treatment for his foot pain in the form of pain medication and an ACE wrap, and he was noted to be using a crutch and an ankle brace.

Plaintiff asserts that he filed a grievance concerning the Defendant Hopkins on the date of the incident, and Defendant Hopkins retaliated by writing a false disciplinary report and threatening Plaintiff.  Defendant Hopkins was unaware of any grievance filed against him, and none was found.  Only one claim by Plaintiff was identified concerning this alleged incident, and it was not a personal injury claim, but an untimely property claim for damage to a music player.

Respectfully submitted,

/s/ Libby Snider

### EXHIBIT LIST

1. KASPER Profile for Martin Riley

2. Declaration of Scott Kincaid

3. Memo Response to Unnumbered Grievance

4. LCF Disciplinary Case 2261

5. Pertinent Medical and Behavioral Health Records of Martin Riley (December 17, 2021, to April 27, 2022)

6. Declaration of Eric Hopkins

7. Declaration of Dan East

8. Declaration of James Gift

9. Photographs of Martin Riley, left foot

10. Declaration of James Skidmore

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing REPORT IN "MARTINEZ VS AARON" INVESTIGATION was placed in the interfacility mail this 16th day of December, 2022, to:

Martin  Riley #52926
El Dorado Correctional Facility
PO Box 311
El Dorado , KS 67042
Plaintiff *pro se*

/s/ Libby Snider