IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MARTIN ARNOLD RILEY,**

      **Plaintiff,**

      v.                                                                                  **CASE NO. 22-3185-JWL-JPO**

**(FNU) SKIDMORE, et al.,**

      **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff, a state prisoner appearing pro se and in forma pauperis, filed this civil rights case under 42 U.S.C. § 1983. Although Plaintiff is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"), his claims arose during his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF"). On September 6, 2022, the Court entered a Memorandum and Order (Doc. 7) dismissing Plaintiff's claims against Defendants Skidmore and Gift, and finding that the proper processing of Plaintiff's claims against the remaining defendants could not be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). The Court ordered the appropriate KDOC officials to prepare and file a *Martinez* Report. The Court's Memorandum and Order provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 7, at 2.) The *Martinez* Report (Doc. 18) (the "Report") has now been filed. The Court will screen Plaintiff's remaining claims.

**I. Nature of the Matter Before the Court**

Plaintiff alleges that on December 16, 2021, while he was incarcerated at LCF, CS1 Hopkins slammed Plaintiff's foot in Plaintiff's cell door several times. (Doc. 1, at 5.)

1

Plaintiff alleges that Hopkins denied Plaintiff's request for medical attention following the incident. *Id*. at 7. Plaintiff alleges that he pressed the emergency button in his cell several times, but Hopkins turned it off each time and denied Plaintiff's request to speak to his supervisor. *Id*.

Plaintiff alleges that several hours later, after the shift change, Plaintiff went to the captain's office and informed Major East, Captain Brown, and Lt. Rasmussen of the incident and notified them that he wanted to file a formal complaint for assault and battery against Hopkins. *Id*. After they reviewed the video footage of the incident, they told Plaintiff to go back to the cell house and denied his request for medical attention. *Id*. at 8. Plaintiff alleges that Unit Team Potter did not provide assistance to Plaintiff and wrote "noted" on Plaintiff's grievances. *Id*. at 17.

Plaintiff alleges that he was finally provided with medical attention on December 20, 2021, and he was issued crutches and a walking cane. *Id*. Plaintiff alleges that he received a disciplinary report on December 19, 2021, which was issued in retaliation for him filing a grievance against Hopkins. *Id*. at 9. Plaintiff alleges that Hopkins is still allowed to work near Plaintiff as of the "present date of 3/17/22."[1] *Id*. Plaintiff alleges that on March 17, 2022, Plaintiff was harassed by CS1 Hopkins while Plaintiff was at his job. *Id*. at 17. In his attached grievance form, Plaintiff alleges that Hopkins "mean faced" Plaintiff in the kitchen while Plaintiff was working and stated "what you looking at" as he walked by Plaintiff. (Doc. 1–1, at 7.)

Plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when Hopkins used excessive force, when staff were deliberately indifferent to his medical needs, and when he was issued a disciplinary report in retaliation for Plaintiff's

---

[1] The Court notes that Plaintiff did not file his Complaint until August 31, 2022, at which time he listed his address as EDCF. The Report notes that Plaintiff was transferred to EDCF on May 24, 2022. (Doc. 18, at 5.)

grievance against Hopkins. Plaintiff seeks $200,000 for pain and suffering, $300,000 for "nerve damage," and $150,000 for "mental and emotional anguish." *Id*. at 20. Plaintiff also seeks punitive damages. *Id*. at 21.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### 1.  Excessive Force

Plaintiff alleges that Hopkins slammed Plaintiff's foot in his cell door several times. The Report provides that:

> On December 16, 2021, Plaintiff was charged with Disobeying Orders in violation of K.A.R. 44-12-304, and Interference with Cell operations, in violation of K.A.R. 44-12-504 in LCF Disciplinary Case No. 2261. (Exhibit 4, p.4).
>
> According to the Disciplinary Report, at approximately 3:15 a.m., Plaintiff used the call button, and the reporting officer, Defendant Hopkins, went to Plaintiff's cell. (Exhibit 4, p.4). Plaintiff said, "let me out for work in the kitchen," and as Defendant Hopkins opened the cell door, Plaintiff aggressively approached him, pointing his finger, and saying, "Why the [f**k] didn't you wake me up for work?" (Exhibit 4, p.4). Defendant Hopkins told him that he did not do wake up calls and pointed out that Plaintiff had an alarm clock for that. (Exhibit 4, p.4). Plaintiff became very loud and demanded that Defendant Hopkins wake him. (Exhibit 4, p.4). Defendant Hopkins told Plaintiff to return to his cell, and he repeated the order two more times before Plaintiff complied. (Exhibit 4, p.4). As he went into the cell, Plaintiff placed his foot in the way of the cell door, preventing it from closing. (Exhibit 4, p.4). Defendant Hopkins reported, "I had to use a little force on the cell door to get it closed." (Exhibit 4, p.4).
>
> Plaintiff pled not guilty to both charges, and a disciplinary hearing was held on January 1s [sic], 2022. (Exhibit 4, p.1). Plaintiff did not request any witnesses, and he did not question the reporting officer. (Exhibit 4, p.7). Defendant Hopkins testified that he gave an order to Plaintiff that was not complied with until the fourth time it was given, and Plaintiff intentionally stuck his foot in the door to prevent it from closing. (Exhibit 4, p.7). The hearing officer reviewed security video of the incident and determined:
>
>> At 03:16.48 CSI Hopkins does approach the door of cell B5-109. After CSI Hopkins opens the cell door you can tell that he has [sic] having a conversation with an inmate inside the cell. At 03:16.58 you can see inmate Riley #52926 exit his cell and continue to have a conversation with the R/O. At 03:17.00 it appears that CSI Hopkins gives an order to inmate Riley as he points towards the location of B5-109. After the initial order is given to inmate Riley he

> continues to try and talk to the R/O. At 03:17.20 R/O appears to give another order as he gestures towards his [sic] inmate Riley's cell again. At 03:17.28 R/O attempts to close the door to Bg-109 [sic] and cannot get it to shut as if something is blocking the door from closing. After applying a little more pressure to the door, it finally secures. Inmate Riley is advised of video findings.
>
> (Exhibit 4, p.8). The hearing officer found Plaintiff guilty of both charges. (Exhibit 4, p.8).

(Doc. 18, at 5–6.)

Plaintiff fails to state a claim of excessive force under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (stating that "claims of excessive force involving convicted prisoners arise under the Eighth Amendment"). The Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Prison officials violate inmates' Eighth Amendment rights when they subject them to the "unnecessary and wanton infliction of pain." *Id*. at 319. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9–10.

Plaintiff must prove both an objective component and subjective component to succeed on an excessive force claim. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). To

6

establish the objective component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson*, 503 U.S. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

Plaintiff has not alleged wrongdoing that is objectively harmful enough to establish a constitutional violation. In *Snyder v. Spilde*, the court found that:

> Merely grabbing and twisting Mr. Snyder's arms does not allege a constitutional violation. *See e.g., Norton v. The City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (dismissing claim in which prison guards were alleged to have injured prisoner by grabbing him around his neck and twisting it because the guards' actions were not objectively harmful enough to establish a constitutional violation); *Reed v. Smith*, No. 97-6341, 1999 WL 345492, at *4 (10th Cir. 1999) (dismissing excessive force claim based on allegations that prison officials grabbed inmate, tried to ram him into a wall, and dragged him while walking him through the prison); *Marshall*, 415 Fed. App'x at 853–54 (dismissing excessive force claim based on allegations that corrections officer dug his fingernails into prisoner's arm without cause to do so resulting in redness and bruising). *Accord De Walt v. Carter*, 224 F.3d 607, 610–11 (7th Cir. 2000) (holding that shoving a prisoner into a doorframe, which resulted in bruising on his back, did not state a constitutional violation); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (holding that bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions."); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a constitutional violation); *Olson v. Coleman*, 804 F. Supp. 148, 149–50 (D. Kan. 1982) (single blow to prisoner's head while escorting him into prison, causing contusion, was de minimis use of force not repugnant to conscience of mankind).

*Snyder v. Spilde*, No. 15-cv-2169-GPG, 2016 WL 1059612, at *3–4 (D. Colo. March 17, 2016).

7

To establish the subjective component, Plaintiff must show that Hopkins "act[ed] with a sufficiently culpable state of mind." *Cochran*, 339 F.3d at 1212 (citation omitted). Plaintiff's Complaint does not allege specific facts indicating that Hopkins engaged in the "wanton and unnecessary" infliction of pain that constitutes a violation of the Eighth Amendment. *See Reed*, 1999 WL 345492, at *4; *see also Wilson v. Wilcox*, No. 14-cv-0421-MSK, 2018 WL 1304532, at *6 (D. Colo. March 13, 2018) ("Because the disciplinary determination is inconsistent with some of Mr. Wilson's allegations . . . the factual findings in the disciplinary determination control, both under *Heck* and consistent with the doctrine of collateral estoppel.") (citing *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999)); *Havens v. Johnson*, 783 F.3d 776, 782–83 (10th Cir. 2015) (citing *Moore v. Mahone*, 652 F.3d 722, 725 (7th Cir. 2011) (pro se complaint's only basis for relief was that the plaintiff was the victim of an unprovoked assault, contrary to prison disciplinary board's findings)). Plaintiff's excessive force claim is subject to dismissal. Plaintiff must show good cause why this claim should not be dismissed.

**2. Medical Care**

Plaintiff alleges that he did not receive medical care for his foot until December 20, 2021—four days after the injury. However, Plaintiff's own attachments include a Health Services Request Form, in which he states that he injured his foot on December 16 and saw a nurse on December 17. (Doc. 1–1, at 8.) The Report also provides that:

> Medical records indicate that Plaintiff had a Nurse Visit on December 17, 2021, at 12:10 PM, based on a sick call he submitted. (Exhibit 5, p.1). The record includes the following notation: "Statement of complaint (in patient's words): My foot was shut in door this morning and there is a sharp pain on side of foot." (Exhibit 5, p.1). Plaintiff reported constant burning shooting pain in his left foot, with onset of December 16, 2021. (Exhibit 5, p.2). X-rays were ordered, and he was given an ace bandage. (Exhibit 5, p.4). The X-ray results were entered on December 20, 2021, and findings indicated:

8

> The metatarsals and toes show no evidence for acute fracture or focal bone lesion. There is spurring at the base of the fifth metatarsal. There is no periarticular erosion. Joint spaces are well maintained. The soft tissues are unremarkable. The tarsal bones are intact. The calcaneus is unremarkable.
> IMPRESSION:
> No fracture. Normal joint spaces. There is spurring at the base of the fifth metatarsal.

(Exhibit 5, p.6).

Plaintiff had a follow-up Nurse Visit on December 21, 2021, where he stated that he had been trying to move around on a fractured foot since 12-16-20, and "on 12/17/21 I seen a nurse and she informed me of the seriousness of my injured foot and informed me that I will be put on list for cat scan for foot. I need assistance right now please." (Exhibit 5, p.7). He also stated, "I want a paper train, you know what I mean," and he indicated that he did not need anymore medication at that time. (Exhibit 5, p. 10).

On December 23, 2021, Plaintiff had a Provider Visit, in which he reported that he had persistent pain and a "swollen spot" of the top of his left foot, that his foot went numb when putting pressure on it, and that he had been using an ACE wrap and a crutch and treating pain with ibuprofen. (Exhibit 5, p.11). Physical examination included a finding of a bone spur noted near the base of the fifth metatarsal, with tenderness on palpation and old bruising noted over the bone spur. (Exhibit 5, p.13). The providers comments stated, "Reviewed radiograph of left foot with SMD, no evidence of old or acute fracture." Plaintiff was advised to continue use of the ACE wrap for support and use ice for discomfort, elevate his foot when resting, stop ibuprofen and start Meloxicam with food, and follow up in two weeks if there was no improvement.
(Exhibit 5, p.13).

At a Provider visit on January 13, 2022, he was seen for continue [sic] pain in his foot. (Exhibit 5, p.22). The record states, "He was noted to have a bone spur on base of $5_{th}$ mt where he has most of his pain. He was recently given an ankle brace which he states helps the pain." (Exhibit 5, p.22). The provider plan called for, "continue medication for pain, foot brace and return as needed." (Exhibit 5, p.23).

On February 9, 2022, Plaintiff was seen by a Behavioral Health provider, where he reported issues of filing a grievance

> against an officer for a prior assault, and the OIC continued to work in B building, creating distress for him. (Exhibit 5, p.36). The record states, "Ct acknowledges that no direct threats or issues have been directly made; Ct continues to focus on possibilities and perception that OIC should not be working around him." (Exhibit 5, p.36).
>
> Plaintiff had a provider visit on February 11, 2022, to discuss his foot pain. (Exhibit 5, p.37). Provider notes state, "He is using a wore out Croc slipper that is wore out and the sole of the shoe has a hole and is thinned out from excessive wear. His most pain is in ball of foot but he also has pain in lateral aspect. (Exhibit 5, p.38). The Provider Plan stated, 'I believe the pain in the bottom of foot is due to the wore out Croc that he is wearing as there is a large hole and severe thinning of the sole. He basically is walking on concrete. He continues to complain of pain over the $5_{th}$ MT base. Radiographs reveled [sic] only spurring over MT base." (Exhibit 5, p.39). Plaintiff was advised to dispose of the shoe, and inserts were ordered for extra padding to wear in tennis shoes. (Exhibit 5, p.39). It was noted that Plaintiff was wearing an ankle brace and said it helped with pain in the lateral foot. (Exhibit 5, p.39).
>
> At a Behavioral Health consultation on March 22, 2022, Plaintiff reported "perceived harassment on behalf of an officer, with the last incident reportedly occurring on 3/17. This has reportedly been going on for months and Ct claims lack of response from staff in addressing. Ct relates the need to periodically 'vent' to BH and also wants his issues documented." (Exhibit 5, p.49). The Assessment notes indicated, "Anxiety is significant and improved. … Depression is significant and improved." (Exhibit 5, p.49).
>
> On April 27, 2022, Plaintiff was seen for a Health Assessment, and there does not appear to be any mention of issues with his foot. (Exhibit 5, pp. 60-64). Physical Exam findings included, "Musculoskeletal: Normal: Visual overview of all four extremities is normal." (Exhibit 5, p.63).

(Doc. 18, at 6–9.)

Plaintiff has failed to state a claim for relief based on his medical care. The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and

wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff was provided with medical care for his foot injury within a day. Plaintiff has failed to show that any defendant disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. Plaintiff's claims suggest, at most, negligence, and are subject to dismissal.

### 3. Retaliation

Plaintiff suggests that he was retaliated against for filing a grievance against Hopkins. Plaintiff alleges that he received the disciplinary report as a form of retaliation, and that Hopkins "mean faced" him and asked "what you looking at" as he walked past Plaintiff. Hopkins' affidavit states that he was unaware of a grievance filed against him. (Doc. 18–5, at 1.)

Plaintiff fails to state a claim of retaliation. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims. Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

Furthermore, § 1983 is not applicable to "challenges to punishments imposed as a result of prison disciplinary infractions," unless the disciplinary conviction has already been invalidated. *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007). The Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously

been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). This rule applies not only when the prisoner challenges his conviction but also when he challenges punishments imposed as a result of prison disciplinary infractions. *Balisok*, 520 U.S. at 648.

### IV.  Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim. Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED** that that Plaintiff is granted until **February 17, 2023,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed.

**IT IS SO ORDERED**.

**Dated January 19, 2023, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE
