IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARTIN ARNOLD RILEY,                     )
                                         )
      Plaintiff                         )
                                         )
      v.                                )       Case no. 22-3185-JWL
                                         )
DEPUTY WARDEN (FNU) SKIDMORE, *et al*.,  )
                                         )
      Defendants.                       )

## <u>FEBRUARY 1, 2023, DECLARATION OF SCOTT KINCAID</u>

Comes now, Scott Kincaid, and declares under the penalty of perjury as follows:

1.      I have been employed by the Kansas Department of Corrections ("KDOC") since January 7, 2007 and have served as Grievance /Property Claims Officer since December 22, 2021.

2.      I am aware that Martin Arnold Riley #52926, has filed a lawsuit regarding alleged personal injury and violation of Constitutional rights occurring while incarcerated at the Lansing Correctional Facility (LCF) on or about December 16, 2021.

3.      I have reviewed our records and have identified one grievance filed by Plaintiff that reached the warden's office concerning allegations in this lawsuit, a true and correct copy is attached hereto as Attachment A.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2023.

*/s/ Scott Kincaid*

_____

Scott Kincaid

Exhibit 14

# MEMO



**KANSAS**
Department of Corrections
*Lansing Correctional Facility*

**DATE:** 12/23/2021

**TO:** Riley, Martin A  # 52926

**FROM:** James Skidmore, DWO

**SUBJECT:** Grievance # AA2022206

---

**Finding of the Facts:** Inmate Riley that moved to Lansing on an administrative transfer in 2015 and has be waiting on a transfer back to Eldorado.

**Conclusions Made:** Based on what grievance officer received and investigated the response from UTM Reed is appropriate.

**KAR 44-15-101 (a)(d)(2) states "the grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure."**

This is a classification issue, and a grievance is not the how to address this issue.

**Actions Taken:** No further action is deemed necessary.

Attachment A

B5 109

## KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

### INMATE COMPLAINT

Inmate's Name __Martin A. Riley__     Number __52926__

Facility __LCF__    Housing Unit __B5/109__    Work Detail __Armark__

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).    See Attachment

1: Responsibility of Appointing Authority
11. Employee Responsibility
1V. Rules of Conduct (ACO 2-1C-04)
L. Use and Maintenance of official Records and Files

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _____

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

I have investigated your concerns outlined in the attached grievance. This is a classification decision and K.A.R. 44-15-101a (d) (2) prohibits use of the grievance procedure in any way as a substitute for, or as a part of, the inmate disciplinary procedure, the classification decision making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure. No further action deemed necessary at this time.

UTm H. Reed    12/16/21

Unit Team Signature      Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

__✗__ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). __12.17.21__

__Mart Riley__          __12-16-21__

Inmate Signature                 Date

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received __DEC 21 2021__   Date of Final Answer __DEC 23 2021__   Date Returned to Inmate __1/4/22__

__Mart Riley__   __1-4-22__          __1/4/22__

Inmate's Signature     Date     Unit Team Signature     Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

### TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number      __AA 2022 206__

Type of Complaint (Item 4: Code 01-75)      __54__

Cause of Complaint (Item 5: Code 01-30)      __03__

Type of Response (Item 6a: Code 01,02,08 or 09)      __01__

## KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

### INMATE COMPLAINT

Inmate's Name **Martin A. Riley**   Number **52926**

Facility **LCF**   Housing Unit **BS/109**   Work Detail **Armark**

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMEN-TATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).   See Attachment

1: Responsibility of Appointing Authority
11. Employee Responsibility
1X. Rules of Conduct (ACO 2-1C-04)
L. Use and Maintenance of official Records and Files

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _____

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

I have investigated your concerns outlined in the attached grievance. This is a classification decision and K.A.R. 44-15-101a (d) (2) prohibits use of the grievance procedure in any way as a substitute for, or as a part of, the inmate disciplinary procedure, the classification decision making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure. No further action deemed necessary at this time.

UTm H. Reed   12/16/21
Unit Team Signature   Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

__X__ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). 12.17.21

Matt Riley   12-16-21
Inmate Signature   Date

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received **DEC 21 2021**   Date of Final Answer **DEC 23 2021**   Date Returned to Inmate _____

_____   _____
Inmate's Signature   Date   Unit Team Signature   Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

### TO BE COMPLETED BY STAFF ONLY

Grievance Serial Number   **AA 2022 206**

Type of Complaint (Item 4: Code 01-75)   **54**

Cause of Complaint (Item 5: Code 01-30)   **03**

Type of Response (Item 6a: Code 01,02,08 or 09)   **01**

12-16-21

I talked with Ball numerous times when he was a Major, and was told by him that he contacted El Dorado because I explained to him why every one who has been sent here on an administrative tranfer has been sent back. I was sent here because my sons mom had to complete her mental health course and it had to be done at a prison of her choice. She chose El Dorado because she resides in Wichita KS and it would be a shorter ride to pick the kids up from work. This was 2015, and she completed her course in 2018. I was sent here on an administrative transfer and I was hoping to transfer back for the last 3yrs now. Mrs. Perkins who is now the Deputy Warden told me that when my ex leave that I could come back. Deputy Warden Ball (Major at the time) stopped me twice and told me I have been approved for transfer and just as soon as they get off lockdown I will be leaving. This information was also told to our BIBR Site Coordinator Mr. David

since his new position, but not once has he tried given me an answer on why I'm still here. I've went to my unit Team but Mrs. Potter can only say what she was told by Rob Arnold. All information was told to me in the Month of Oct.

Sincerely,
Martin Riley
52926

Form 9
For Cellhouse Transfer
Work Assignment _____
Interview Requests

*Riley*

Last Name Only

## KANSAS DEPARTMENT OF CORRECTIONS

*52926*

Number

## INMATE REQUEST TO STAFF MEMBER

To: _David Johnson_____ Date: _12-2-31_____
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

I understand you talked with Bell (who was a Major at the time) telling you that once I pass my sweat test that Riley # 52926 will be leaving three days after to EDCF correct.

Work Assignment: _Armark_____ Living Unit Assignment: _B-5. 109_____

Comment: _____ Detail or C.H. Officer: _____

Disposition: _That is what I understood._
_David Johnson_

To: _____ Date: _____
(Name & Number)

Disposition:

## KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

**INMATE COMPLAINT**

Inmate's Name _Martin A. Riley_  Number _52926_

Facility _LCF_  Housing Unit _BS/109_  Work Detail _Armark_

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMEN-TATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). _See Attachment_

I. Responsibility of Appointing Authority
II. Employee Responsibility
III. Rules of Conduct (ACO 2-1C-04)
L. Use and Maintenance of official Records and Files

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _____

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

_____
Unit Team Signature                          Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days.)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

_____ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _____

_____
Inmate Signature                             Date

**`WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received _____  Date of Final Answer _____  Date Returned to Inmate _____

_____
Inmate's Signature            Date     Unit Team Signature                Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number

Type of Complaint (Item 4: Code 01-75) _____  _____

Cause of Complaint (Item 5: Code 01-30) _____  _____

Type of Response (Item 6a: Code 01,02,08 or 09) _____  _____

# KANSAS DEPARTMENT OF CORRECTIONS

| | **I**NTERNAL **M**ANAGEMENT **P**OLICY AND **P**ROCEDURE | SECTION NUMBER 02-118D | PAGE NUMBER 1 of 17 |
|---|---|---|---|
| Kansas Department of Corrections | | **SUBJECT:** HUMAN RESOURCES: Employee and Volunteer Rules of Conduct and Undue Familiarity | |
| **Approved By:** Secretary of Corrections | | **Original Date Issued:** | 07-01-15 |
| | | **Replaces Version Issued:** | N/A |
| | | **CURRENT VERSION EFFECTIVE:** | 07-01-15 |

| APPLICABILITY: | _ ADULT Operations Only | _ JUVENILE Operations Only | X DEPARTMENT-WIDE |
|---|---|---|---|

## POLICY STATEMENT

Every contact with offenders should be viewed as an opportunity to set a positive example and to emphasize positive behavior and individual accountability. All employees of the Kansas Department of Corrections shall adhere to the Department's Code of Ethics, as well as all other applicable statutes, regulations, performance, conduct, and/or physical and mental fitness expectations as established herein. (ACI 3-4067, 3-APPFS-3C-02) The Department is committed to providing a productive and efficient work environment free of behaviors that are violent, threatening, disruptive, harassing, dishonest, unethical, or that violate any of the provisions of this document. (3-APPFS-3C-02) Violation of any statute, regulation, rule of conduct, or condition of employment may subject the employee to criminal charges or disciplinary action, up to and including dismissal. (ACO 2-1C-04)

The Kansas Department of Corrections absolutely forbids acts of undue familiarity with offenders. The Department shall fully investigate, and take all necessary corrective and disciplinary action, per provisions in IMPP 02-120D, concerning any person who engages in undue familiarity.

## DEFINITIONS

Appointing Authority: The person designated pursuant to IMPP 02-109D for each respective division or facility of the department.

Contraband: Any item that has not been approved for introduction into a correctional facility by law, regulation, policy, or otherwise specifically authorized by the warden, per K.A.R. 44-2-103 or the superintendent, per K.A.R. 123-2-111.

Employee: Any person employed full time, part time, or on a temporary appointment to the Kansas Department of Corrections. For purposes of this IMPP, this definition shall include any person employed by a public or private entity under contract to provide services to the Kansas Department of Corrections; including supervision services for persons on parole, conditional release, and post-release supervision.

Facility: Includes KDOC adult and juvenile correctional facilities, parole offices, Central Office, and Correctional Industries offices or work sites.

Gross Negligence: Conduct indicating a reckless disregard and complete indifference for the possible consequences of the person's action.

Horseplay: Any rough, boisterous, or rowdy play; or light hearted recreational activity pursued for the purpose of diversion or amusement.

II.    **Employee Responsibility**

A.    It is the responsibility of all employees to familiarize themselves with and to comply with requirements and conditions stated in the documents identified in Sections I. A. and B.

1.    Each employee shall be given time on duty or in training to familiarize themselves with the documents.

2.    During orientation, all new employees will be provided an overview of and shall sign a statement acknowledging access to and awareness of personnel policies and regulations.

3.    All new employees, contract personnel, volunteers, and all promoted and/or transferred employees shall be required to acknowledge the Department's Code of Ethics in writing on Attachment A, Employee Acknowledgements in writing on Attachment B, and State of Kansas Social Media Understanding & Acceptance of Policy in writing on Attachment C. (ACI 3-3067, 3-APPFS-3C-02)

B.    Violation of any rule of conduct may be grounds for disciplinary action up to and including dismissal. (ACO 2-1C-04)

C.    Employees and volunteers are required to report known or suspected violations of this policy to a supervisor or manager in a timely manner.

III.    **Use of Deadly Force by an Employee**

A.    The ability and willingness to utilize deadly force in situations where the application of this degree of force is authorized and appropriate is a condition of employment for all corrections officers and corrections specialists.

B.    All corrections officers, corrections specialists, and special agents who are trained and qualified in the use of weapons and the application of deadly force pursuant to IMPP 03-106D and IMPP 12-111 are subject to assignment to any post or duty where the application of deadly force may be authorized or necessary.

1.    Any employee who refuses such an assignment or refuses or fails to apply deadly force under circumstances warranting the use of this degree of force shall be subject to disciplinary action up to and including dismissal. (ACO 2-1C-04)

2.    Any employee who applies deadly force under circumstances not warranting the use of this degree of force shall be subject to disciplinary action up to and including dismissal.

IV.    **Rules of Conduct** (ACO 2-1C-04)

A.    Following Orders

1.    Employees shall promptly obey lawful orders given them by proper authority.

2.    In the event of conflicting orders, the last order shall be obeyed.

B.    Conduct and Demeanor

1.    While on duty, employees and volunteers shall at all times maintain a courteous, respectful and professional demeanor in their dealings with, and in the presence of, offenders, employees, visitors, and the public.

2.    Employees or volunteers shall not use indecent, abusive or profane language while on duty, including racial or ethnic slurs or jokes, or sexually suggestive comments or jokes.

3. Non-security staff who are issued uniforms shall be responsible for the care and maintenance of issued items, including making a request for replacement items when necessary due to normal wear and tear.

   a. Supervisory staff shall be responsive to requests for normal wear and tear replacement. Requests for uniform replacement shall not be unreasonably denied.

4. All employees, while on duty or otherwise representing the Department in an official capacity, shall dress in neat, clean and conservative attire, free of holes, tears and stains, and appropriate to the assignment.

5. Standards for the appearance and attire of security staff within the facilities are specified in IMPP 12-123.

6. All employees shall observe good habits of grooming and personal hygiene and be free of odors generally offensive or unpleasant to others.

E. Punctuality and Time Reporting

   1. Employees shall be at their assigned work/duty station at their scheduled time. A pattern of failure to report at the scheduled time may be grounds for disciplinary action.

   2. Unless exempted by the appointing authority, an employee who will be late for or absent from work due to an emergency or to the illness of the employee or of a member of the employee's family, shall notify the immediate supervisor at least one (1) hour before the beginning of the employee's scheduled work day. Persons employed in parole offices, Central Office, KCI, or any other location where a one (1)-hour reporting requirement may not be possible shall notify the immediate supervisor as soon as possible prior to the beginning of the scheduled workday.

   3. An employee whose position is non-exempt from overtime standards under the provisions of the FLSA shall submit time and leave documents that accurately report his or her work and leave hours each pay period.

   4. Every employee shall accurately report all of his or her use of leave time in the manner described in IMPP 02-114D. Falsifying or deliberately reporting an inaccurate accounting of leave usages or balances may subject the employee to formal disciplinary action.

F. Reading or Other Diversions

   1. While on duty, uniformed employees shall not read personal material, use personal radios, televisions, tape/CD/DVD players, or other electronic equipment, or engage in distracting amusements or activities except to read such rules as described in Sections I.A. and B. or other work-related material unless otherwise approved in advance by the appointing authority.

   2. While on duty, non-uniformed employees shall not read for personal entertainment or engage in other distracting amusements or activities, except while on an authorized break or lunch hour. If approved by the supervisor/manager, non-uniformed employees may use personal radios, tape/CD players and other electronic equipment as long as it does not distract the employees or others from their assigned duties.

G. Sleeping or Being Inattentive While on Duty

   1. Employees shall be alert and in full possession of their faculties while on duty.

   2. Sleeping while on duty is prohibited.

appointing authority and/or as permitted by IMPPs 02-101, 02-119D, 02-124, 05-101 and/or 05-107.

M.   Department Grounds, Buildings, and Bulletin Boards

1.   No person shall post any notices, petitions, or other personal material upon department grounds, buildings, or bulletin boards without the approval of the appointing authority.

a.   Material to be posted on official bulletin boards will be limited to legally mandated bulletins, posters, informational material, official facility announcements, office communiqués, and items outlined by memoranda of agreement.

b.   Bulletin boards in break rooms, mail rooms, offices, or other common areas that are generally considered to be openly accessible to employees may include postings of work-related information, position vacancy announcements, and promotional opportunities. Personal, non-work-related solicitations shall be allowed on agency bulletin boards only with the approval of the appointing authority.

2.   No person shall conduct any meeting, demonstration, or solicitation on any property owned or occupied by the department without prior approval from the appointing authority.

a.   Approval for the use of conference rooms, meeting rooms, parking lots, and common areas shall be limited to individuals or groups conducting official state business and activities sponsored by the facility or office. Use of such property for other activities may be allowed with the approval of the appointing authority.

N.   State Owned Property, Services, and/or Supplies

1.   Use of State owned property and/or services for personal purposes are strictly prohibited, except where a specific legal authorization exists.   Such property and/or services include but are not limited to:

a.   Telephone long distance or toll services;

b.   Department issued cellular phones and radios;

c.   Tools and equipment;

d.   Food or supplies purchased or produced for offender or facility/office use;

e.   Chemicals of any kind;

f.   Office supplies; and

g.   Postage.

O.   Possession of a Valid Driver's License

1.   As a condition of employment, all Corrections Officers, Juvenile Corrections Officers, and Parole Officers shall have a valid driver's license issued by their State of residence during the period of their employment.  When duties require the operation of a state owned, leased or rented vehicle, individually designated positions in other classifications may require possession of a valid driver's license when such a requirement has been approved by the Director, KDOC Human Resource Division.

# KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM

**INMATE COMPLAINT**

Inmate's Name _Martin A. Riley_          Number _52926_

Facility _LCF_          Housing Unit _B5/104_          Work Detail _Aramark_

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). O

See Attachment

1. Responsibility of Appointing Authority    } IV. Rules of Conduct (ACO-2-1C-04)
II. Employee Responsibility
III. Use of Deadly Force by an Employee

Date this report was given to Unit Team for informal resolution (to be completed by inmate). _____

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

I have investigated your concerns outlined in the attached grievance. 44-15-101 Grievance Procedure; Informal Resolution; formal levels; (b) states, "Before utilizing the grievance procedure, the inmate shall be responsible for attempting to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis. An inmate in a facility or parole setting shall contact the unit team members for the attempt at informal resolution." You submitted the grievance prior to attempting an informal resolution with CSI Hopkins. You are encouraged to wait for the informal resolution prior to submitting the grievance. Furthermore, Allegations of staff misconduct are investigated and if any corrective action is warranted, it will not be discussed with you. No further action deemed necessary at this time. _Tim H. Reed_    _12/21/21_

Unit Team Signature          Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

__X__ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _____

_Mart Riley_          _12-22-21_

Inmate Signature          Date

**WARDEN RESPONSE** (Complete, attach response and return within 10 Working days.)

Date Received _DEC 23 2021_    Date of Final Answer _DEC 23 2021_ Date Returned to Inmate _____

_____          _____    _____          _____
Inmate's Signature          Date          Unit Team Signature          Date

If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.

**TO BE COMPLETED BY STAFF ONLY**

Grievance Serial Number _AA 2022 206_

Type of Complaint (Item 4: Code 01-75) _54_

Cause of Complaint (Item 5: Code 01-30) _03_

Type of Response (Item 6a: Code 01,02,08 or 09) _01_

On Dec 16th 2021, approximiately 2:30 or 2:50 am, I Martin Riley woke up and hit the emergency button in room to get the officers (Sgt. Hopkins) attention. After 5 minutes of waiting officer Hopkins came to my door and I asked him was there work call for kitchen workers for 2:00 am shift workers? officer Hopkins opened my door and I asked again was there work. He informed me he let workers out about 15 to 20 minutes ago. I asked him why didn't he wake me. He informed me it's not his job to wake me and I should buy an alarm clock!!!

Now, understand, we were (The entire Unit) told on Dec 15, 2021 at 6:00 p.m that the facility is on lock down by Skidmore, and Ball until further notice. This is what officer Hopkins announced. Seeing that I go to work at 2:00 a.m. I asked officer Hopkins how would I know that we were allowed to go to work if he never came to my door? I was not notified by Skidmore, Ball or Hopkins that lockdown was lifted. When I walked back to my room to retreive my Ice chest i reached down to pick it up and I felt pressure on my foot, so I looked up from my bending position to see officer Hopkins trying to shut the door on my foot, so I told him to stop pushing because my foot is in the door and also my MPS was also, so he ignored me and kept pushing until

I had to push some to get my MP3 and foot out of the door. I was assulted by this officer not providing me with any assistance I requested. I requested for him to call the Capt., but his answer was no. All of this can be seen on camera, but it seems I can't get help from the Capt. office either.

# KANSAS DEPARTMENT OF CORRECTIONS

**Kansas**
Department of Corrections

**I**NTERNAL **M**ANAGEMENT **P**OLICY AND **P**ROCEDURE

| SECTION NUMBER | PAGE NUMBER |
|---|---|
| 02-118D | 1 of 17 |

| SUBJECT: |
|---|
| HUMAN RESOURCES:  Employee and Volunteer Rules of Conduct and Undue Familiarity |

| Approved By: | |
|---|---|
| *Secretary of Corrections* | Original Date Issued:  07-01-15 |
| | Replaces Version Issued:  N/A |
| | CURRENT VERSION EFFECTIVE:  07-01-15 |

| APPLICABILITY: | _ ADULT Operations Only | _ JUVENILE Operations Only | X DEPARTMENT-WIDE |
|---|---|---|---|

## POLICY STATEMENT

Every contact with offenders should be viewed as an opportunity to set a positive example and to emphasize positive behavior and individual accountability.  All employees of the Kansas Department of Corrections shall adhere to the Department's Code of Ethics, as well as all other applicable statutes, regulations, performance, conduct, and/or physical and mental fitness expectations as established herein. [ACI 3-4067] [3-APPFS-3C-02] The Department is committed to providing a productive and efficient work environment free of behaviors that are violent, threatening, disruptive, harassing, dishonest, unethical, or that violate any of the provisions of this document. [3-APPFS-3C-02]  Violation of any statute, regulation, rule of conduct, or condition of employment may subject the employee to criminal charges or disciplinary action, up to and including dismissal. [ACO 2-1C-04]

The Kansas Department of Corrections absolutely forbids acts of undue familiarity with offenders.  The Department shall fully investigate, and take all necessary corrective and disciplinary action, per provisions in IMPP 02-120D, concerning any person who engages in undue familiarity.

## DEFINITIONS

Appointing Authority:  The person designated pursuant to IMPP 02-109D for each respective division or facility of the department.

Contraband:  Any item that has not been approved for introduction into a correctional facility by law, regulation, policy, or otherwise specifically authorized by the warden, per K.A.R. 44-2-103 or the superintendent, per K.A.R. 123-2-111.

Employee:  Any person employed full time, part time, or on a temporary appointment to the Kansas Department of Corrections. For purposes of this IMPP, this definition shall include any person employed by a public or private entity under contract to provide services to the Kansas Department of Corrections; including supervision services for persons on parole, conditional release, and post-release supervision.

Facility:  Includes KDOC adult and juvenile correctional facilities, parole offices, Central Office, and Correctional Industries offices or work sites.

Gross Negligence:   Conduct indicating a reckless disregard and complete indifference for the possible consequences of the person's action.

Horseplay:  Any rough, boisterous, or rowdy play; or light hearted recreational activity pursued for the purpose of diversion or amusement.

<u>Offender</u>:  For the purposes of this IMPP, this term refers to any individual in the custody of the Secretary of Corrections, whether incarcerated or on post-incarceration supervision; any individual who during the prior two (2) years has been in the custody of the Secretary of Corrections, whether incarcerated or on post-incarceration supervision; or any offender from another jurisdiction who is subject to a sanction for violation of criminal law, including those on supervised or non-supervised release status, whom the employee knows or should reasonably know to be in that status.

<u>Restricted Access Areas</u>:  In a correctional facility, this would include areas that require passage through a security check point, within the secure perimeter and are in locked areas requiring a key, keycard, passcodes, or similar device to allow entry.

<u>Smoking Paraphernalia</u>:  Items that would facilitate in the use of tobacco products to include, but not limited to lighters, matches, altered batteries, cigarette papers, rolling machine, and electronic cigarette related devices.

<u>Tobacco Products</u>:  Includes cigarettes; pipes; pipe tobacco; loose-leaf tobacco; tobacco substitutes; chewing tobacco; smokeless tobacco; cigars; matches; cigarette lighters; smoking paraphernalia; electronic cigarettes (also known as e-cigarettes, personal vaporizers or PVs); and all items developed or processed for the primary purpose of facilitating the use or possession of tobacco or tobacco-based products.   Tobacco products do not include pharmacological aids for smoking cessation approved by the Food and Drug Administration (FDA).

<u>Tobacco Substitutes</u>:  Any substance ingested by smoking or herbal/leaf-based substitutes for chewing tobacco.

<u>Undue Familiarity</u>:  Conversation, contact, personal or business dealing between an employee and offender or offender's family which is unnecessary, not a part of the employee's duties, and related to a personal relationship or purpose rather than a legitimate correctional purpose.  Undue familiarity includes horseplay, betting, trading, dealing, socializing, family contact unrelated to the employee's duties, sharing or giving food, delivering or intending to deliver contraband, personal conversation, exchanging correspondence, including social networking via the intranet/internet or in any other manner developing a relationship with an offender which is anything other than an employee/offender relationship.

<u>Valid Driver's License</u>: A license to operate a motor vehicle, issued by the employee's state of residence, which is free of currently active revocations, suspensions, and/or restrictions that would prohibit the employee from operating a motor vehicle in a manner required of his or her position.

<u>Volunteer</u>: Any person, including interns, who provides, through his/her own volition, a service to a facility or field services office, and has completed an orientation and basic volunteer program.

<u>Work Area</u>:  Any KDOC facility or satellite unit, parole office, Central Office division, or any location where offender work crews are assigned.

## PROCEDURES

I.      **Responsibility of Appointing Authority**

      A.      Each appointing authority shall make accessible to employees:

            1.      Kansas Statutes Annotated (K.S.A.).

            2.      Kansas Administrative Regulations (K.A.R.).

            3.      Internal Management Policies and Procedures (IMPP).

      B.      In addition to those items listed in Section I.A., each warden, superintendent, and regional parole director shall make field, general and post orders accessible to employees.

      C.      Each appointing authority shall be responsible for providing training to employees on the documents identified in Sections I.A. and B. and the time spent in this pursuit shall be documented in the employee's training file.

II.   **Employee Responsibility**

    A.    It is the responsibility of all employees to familiarize themselves with and to comply with requirements and conditions stated in the documents identified in Sections I. A. and B.

        1.    Each employee shall be given time on duty or in training to familiarize themselves with the documents.

        2.    During orientation, all new employees will be provided an overview of and shall sign a statement acknowledging access to and awareness of personnel policies and regulations.

        3.    All new employees, contract personnel, volunteers, and all promoted and/or transferred employees shall be required to acknowledge the Department's Code of Ethics in writing on Attachment A, Employee Acknowledgements in writing on Attachment B, and State of Kansas Social Media Understanding & Acceptance of Policy in writing on Attachment C. (ACI 3-3067; 3-APPF 5-3C-02)

    B.    Violation of any rule of conduct may be grounds for disciplinary action up to and including dismissal. (ACO 2-1C-04)

    C.    Employees and volunteers are required to report known or suspected violations of this policy to a supervisor or manager in a timely manner.

III.  **Use of Deadly Force by an Employee**

    A.    The ability and willingness to utilize deadly force in situations where the application of this degree of force is authorized and appropriate is a condition of employment for all corrections officers and corrections specialists.

    B.    All corrections officers, corrections specialists, and special agents who are trained and qualified in the use of weapons and the application of deadly force pursuant to IMPP 03-106D and IMPP 12-111 are subject to assignment to any post or duty where the application of deadly force may be authorized or necessary.

        1.    Any employee who refuses such an assignment or refuses or fails to apply deadly force under circumstances warranting the use of this degree of force shall be subject to disciplinary action up to and including dismissal. (ACO 2-1C-04)

        2.    Any employee who applies deadly force under circumstances not warranting the use of this degree of force shall be subject to disciplinary action up to and including dismissal.

IV.   **Rules of Conduct** (ACO 2-1C-04)

    A.    Following Orders

        1.    Employees shall promptly obey lawful orders given them by proper authority.

        2.    In the event of conflicting orders, the last order shall be obeyed.

    B.    Conduct and Demeanor

        1.    While on duty, employees and volunteers shall at all times maintain a courteous, respectful and professional demeanor in their dealings with, and in the presence of, offenders, employees, visitors, and the public.

        2.    Employees or volunteers shall not use indecent, abusive or profane language while on duty, including racial or ethnic slurs or jokes, or sexually suggestive comments or jokes.

3. Employees or volunteers shall neither encourage nor participate in any behaviors that would create a hostile or fearful work environment, including but not limited to:

   a. Violent confrontations;

   b. Assaultive acts or threats of any kind;

   c. Any battering behavior, including any shoving, pushing, or any other rude application of force to the person of another;

   d. Any telephone harassment or abuse of other modes of communication; or,

   e. Any other behaviors that could create a hostile or fearful work environment.

4. Employees and volunteers shall, whether on duty or off duty, avoid conduct, which would be likely to bring criticism upon themselves or the Department.

C. Undue Familiarity

1. No employee or volunteer shall indulge in undue familiarity with any offender nor shall they permit undue familiarity on the part of any offender toward themselves.

2. No employee or volunteer shall engage in inappropriate conversations or discuss his or her personal affairs with any offender to include:

   a. Discussion of personal matters about himself/herself, or any other employee, volunteer or contract personnel, sexual matters, relationship issues, family matters, or other similar issues, unless specifically required in the performance of their duties.

3. No employee or volunteer shall engage in any unauthorized game, contest or sport with any offender in the custody of the Secretary of Corrections.

   a. No employee or volunteer shall engage in horseplay with any offender in the custody of the Secretary of Corrections.

4. No employee or volunteer shall establish a personal relationship with an offender or an offender's family or friends, including a friendship, a romantic relationship, a nurturing relationship, or a sexual relationship, unless the employee is related to the offender by blood or marriage and has reported the relationship to his or her immediate supervisor or appointing authority via "Notice of Offender Relationship", Attachment D.

5. No employee shall contact or correspond with any offender, member of an offender's family, or correspondent or visitor of an offender unless assigned duties require it or permission has been granted by the appointing authority.

   a. Should an employee be contacted by any person listed in Section IV.C.5., while off duty, he or she shall report this fact to the appointing authority as soon as possible and no later than the beginning of the employee's next scheduled shift.

6. No volunteer shall contact or correspond with any offender, member of an offender's family, or correspondent or visitor of an offender unless assigned duties require it.

   a. Should a volunteer be contacted by any offender, member of an offender's family, or correspondent or visitor of an offender while off duty, he or she shall report this fact to the appointing authority as soon as possible and no later than the beginning of the volunteer's next scheduled shift.