In The United States District Court
For The District of Kansas

Martin Arnold Riley
      Plaintiff,

       ✓                Case No. 22-3185-JWL-JPO

(FNU) Skidmore et al.,
          Defendant(s)

## Motion
## Opposition To The Defendant's
## Motion To Dismiss

    Comes Now, plaintiff, Martin Arnold Riley, pro-se bringing civil rights action pursuant to 42 U.S.C. § 1983. This court entered a "Memorandum and Order" and to show cause, granting plaintiff an opportunity to show good cause why his claim regarding incident in 2021 should not be dismissed.

1

## I. Cruel and Unusual Punishment - Excessive Force

On 12-16-21, at 3:15 am signaled emergency button on door for the officer on duty. Defendant Hopkins came to plaintiff Riley's door and asked plaintiff, "What do he want." Plaintiff explained to defendant through door of B-5 cell #109, "Were we still on lockdown." Defendant Hopkins at this time opened plaintiff's door, and asked plaintiff, "What did you say." Plaintiff asked again, "were we on lockdown still." Defendant told plaintiff "No". Plaintiff explained to defendant that he had to be at work 1:00 am and it was 3:15 am, why didn't he wake me up. Defendant states, "I don't wake inmates up, buy a alarm clock." First, this Court needs to know that on 12-15-21, Active Warden Skidmore and Deputy Warden Ball locked the facility down at 5:30 pm, this is why we were on lockdown. Plaintiff don't know the reason why other then we were put on lockdown until further notice. Not knowing if the facility was off lockdown, plaintiff woke-up at 3:10 am on 12-16-21, thinking the facility was still on lockdown, so plaintiff had no other way of knowing other then the officer on duty notifying kitchen workers that there will be work call.

2

Plaintiff does not own a alarm clock. Plaintiff Riley has been incarcerated at Lansing for 7yrs., and it was always a custom that kitchen workers who open the kitchen at 1:00 am to be waken by unit duty officer. When defendant Hopkins opened plaintiff Riley's door, it was obvious defendant was upset about something the way defendant approached plaintiff's door and his demeanor in the way he asked plaintiff, "what do you want." Plaintiff ask again in a calm attitude, "were we still on lockdown." Defendant stated "No...why." Plaintiff was explaining to defendant that his work schedule was at 1:00 am and it was 3:15 am, if we were off lockdown why he didn't notify plaintiff. Defendant told plaintiff he don't do wake-up calls for inmates. Plaintiff tried explaining to defendant the facility was on a lockdown, so what other way would plaintiff know if not by unit duty officer. Understand defendant Hopkins is not B-5 regular officer that night. Plaintiff was told to lockdown by defendant, and not understanding the aggression from defendant, knowing plaintiff has done nothing wrong other then trying to make sense on why defendant couldn't wake me up and notify plaintiff

3

lockdown is over and that there will be work call at 1:00 am for kitchen workers. Plaintiff in a normal state of mind walked to cell to lock-up as ordered. It is true defendant did ask plaintiff more then once to lockdown. As plaintiff was entering room defendant was shutting door, not knowing if defendant noticed plaintiff hasn't cleared foot from door, defendant continued shutting door. The first pressure plaintiff was thinking defendant didnt notice plaintiff's foot. The second pressure was so sudden plaintiff made eye contact with defendant, and what plaintiff seen in defendants eyes was pure hate and anger on defendants face. Plaintiff yelled, "My Foot" to defendant Hopkins to let him know plaintiff foot was in door, and plaintiff couldnt move because he was at an angle when walking in his room plaintiff had no way of moving other than forward. The third time plaintiff knew defendant was trying to cause bodily harm to plaintiff and plaintiff put his MP3 player in door just so that he could remove foot. This is how plaintiff's player got broke. Plaintiff did file an injury claim and property claim to both incident. Plaintiff can produce proof on what he claim to be truth.

4

Defendant's claim plaintiff put foot in door on purpose. To state a claim on false pretense by defendants, than defendant's should have no reason to deny the courts to review such a fact that is valid, and can be proven. After the attack by defendant Hopkins, plaintiff asked for medical attention and for defendant to call his supervisor. Plaintiff was met with more anger by defendant when he states, "<u>Fxxk you.... to bad....deal with it.</u>" From about 3:20 am until defendants shift change on 12-16-21, plaintiff used emergency light that is connected to plaintiff Riley's door for help, but was met with defendant Hopkins continues negligence of turning emergency light off for 2½ hours. Asher v. Three Forks Reg'l Jail, 2005 U.S. Dist. LEXIS 20365 (E.D. Ky. Sept. 16, 2005).

## <u>II. Nature of the Case - Objectively and Subjectively</u>

On Dec. 16th, 2021, it is a fact that defendant Hopkins did violate plaintiff Riley's 8th Amendment right against Cruel and unusual punishment by the alleged use of physical force, by deliberate

indifference to plaintiff medical needs. Also, a violation of plaintiff 14th Amendment, when defendant refused to call his supervisor when plaintiff requested. The only way this Court will understand the factual nature of complaint is to draw a conclusion on actual evidence and allow this complaint to move forward for discovery.

A) Defendant East claim, "plaintiff did try to put foot in door at the last minute, but it did not appear that the door was shut on plaintiff, but was closed in a soft, non-dramatic way". Defendant is-claiming defendant Hopkins never used force to shut door. How is defendant can state plaintiff did try to put foot in door, and than contridict his own statement by saying, "but it did not appear the door was shut on plaintiff." Either it did or didn't...(see Exhibit 4, pg. 4 of defendant Hopkins own statement in Martinez Report. Also, see Exhibits 9, pg. 1, Exhibits 9, pg. 2, and Exhibits 9, pg. 3 in Martinez Report of foot footages). Plaintiff ask that this Court draw their own conclusion on actual facts and not what defendant East assume what happened, Defendant East also states, "security video "was" retained for

90 days. Their is nothing written that would say security video can only be retained for 90 days, no exception even if plaintiff ask for security video to be preserved. Was security video retained for the purpose of KDOC's benefit, or does plaintiff have no Constitutional right to use evidence KDOC used to convict plaintiff to use in his own defense as well. Once again plaintiff ask that this court review facts that plaintiff can produce, and than without prejudice by this court to all facts to be produse for discovery.

B) Defendant Gift claims he responed on same day of disciplinary written by defendant Hopkins, and Gift states, "he was unable, "Due To Technical Issues, determine whether a Use of force report was available". Once again plaintiff ask that this court recognize the degree defendants are willing to go, to not give this court real facts, and evidence, when clearly all defendants in his/her individual capacity admit to watching video footage on 12-16-21, so what issues other than what defendants don't want this court to see.

7

III. 8th and 14th Amendment violations by: East, Brown, Rasmussen, Potter.

When plaintiff notified the proper authority on Dec. 16th 2021 of this assault and battery by defendant Hopkins, each defendant in his/her individual capacity denied plaintiff Riley any help (medically and professionally). Prison officials who fail to follow their own rules, regulations, and polices concerning the protection of prisoners, all defendants in his/her individual capacity are very much in support of a deliberate indifference claim.

1) Not one defendant in his/her individual capacity reported or documented complaint of matter on Dec. 16th 2021, in protection of plaintiff Riley's safety. (This is when this Court has to question Gifts statement about "Technical Issues." all of this play a role in all defendants statements and testimony to any truth) (See Exhibit 7, pg. 1 in Martinez Report).

2) Not one defendant in his/her individual capacity claim plaintiff showed any threat or violent aggression toward defendant Hopkins on 12-16-21

8

See Gomez v. Vernon, 255 F. 3d 1118, 1127 (9th Cir. 2001)
(The Departments failure to investigate or correct
Constitutional violations supports the district Courts
finding that there was a policy or Custom that
led to violations of the inmates rights).


Deliberate Indifference in the Eighth Amendment
Cases falls somewhere between mere negligence
(Carelessness) and actual malice (intent to cause harm).
That is, it amounts to recklesness.
The Supreme Court has held that a prison official
can be found reckless or deliberately indifferent if,
"the official knows of and disregards an Excessive
risk to inmates health or safety." This is the same
standard of recklesness that is used in Criminal law,
and it is sometimes Called the "Subjective" approach
to recklesness. Plaintiff Riley feels he gave all
defendants (East, Brown, Rasmussen, Potter) in his/her
individual Capacity plenty of time to rectify on the
actions of defendant Hopkins. The fact that a
Condition or a risk was obvious when plaintiff
showed injury to each defendant in his/her
individual Capacity is Circumstantial Evidence
that will permit a judge or jury to Conclude

9

There is some plausible truth to allow complaint to move forward for trial. Reed v. McBride, 178 F. 3d 849, 854 (7th Cir. 1999) ("A prison officials knowledge of prison conditions learned from a inmates communication can.... require the officer to excercise his/her authority and to take the needed actions to investigate, and if necessary to rectify the offending condition") See also: Hudson v. McMillian, 503 U.S. 1.

## IV. Mental Health/Behavorial Health

Plaintiff Riley's mental and emotional state through this entire ordeal of incident has and still is very traumatizing when plaintiff reported incident. On April 27, 2022 plaintiff was seen by Behavorial Health and defendants state, plaintiff never mentioned anything about his foot to Behavorial Health. To make since of this frivilous statement, They are not foot doctors and don't hold a degree in treating plaintiff foot. Their job and what plaintiff discusses with them is in linement with plaintiff mental health and emotional state plaintiff was

10

dealing with in our meetings, such as:

A) why defendant Hopkins was allowed to work in plaintiff unit while he slept at night knowing plaintiff has expressed paranoia and fear to unit team Potter and behavorial health of his mental health issues of his anxiety issues.

B) Plaintiff reported to unit team Potter and behavorial health of being harassed on Feb. 17th 2022, by this defendant Hopkins coming to plaintiff's job just to try and provoke plaintiff.

Understand still as plaintiff followed every procedure in accordance to filing his grievance, still defendant potter chose to not document anything plaintiff reported to her. All plaintiff got from defendant is always "Noted."

Once again defendants wish to downplay this whole complaint of plaintiff as if what plaintiff is asking of them to do makes them above the law, and what happened to plaintiff on 12-16-2 is justifiable without any proof from them.

11

# V. Disciplinary Report

On January 1st, 2022, there was a disciplinary hearing held, and plaintiff was found guilty for (Disobeying Orders 44-12-304 and Interference with Cell operations 44-12-504). Plaintiff ask that this Court understand the nature of plaintiff conviction, and what defendant Hopkins states plaintiff committed on Dec. 16th 2021. Defendant states, he wrote plaintiff a disciplinary for (This shows the court how far of deceitful defendants wish to go with their false claims): Threatening 44-12-306 and Disobeying Orders 44-12-304. Once again this court must understand the state of mind of defendant Hopkins to state facts that he believes to be true, but are not. (Exhibit 4, pg 4 and Exhibit 6, pg. 2 in Martinez Report). There was not one claim from any defendant's stating that after watching video footage that they shaw plaintiff threaten, or showed any violent gesture to defendant Hopkins on 12-16-21. Defendant Hopkins wanton with force assaulted and batterized plaintiff on 12-16o

It's a fact that Unit Team Potter states, she received my complaint outside of 3 day window of filing with Secretary of Corrections on 2-16-22. This Court once again has to understand the state of mind of defendants statement, when plaintiff never submitted anything to defendant to file. Plaintiff filed with Eric Reinhard because Ms. Potter was not being truthful with plaintiff from the beginning, so plaintiff filed with another Unit team. (Review Inmate Grievance form and Inmate Request signed by Unit Team Reinhard) (Exhibit A, C, and D)

KDOC claim that plaintiff never filed injury claim. (Exhibit E)

KDOC claim plaintiff never filed an appeal to the Secretary of Corrections (Exhibit C, D)

Plaintiff filed every form accordingly to KDOC policy, but was not given the proper help from any defendants. Plaintiff hopes this information will give the Courts a more clear understanding the degree of truth these defendants are willing to go to not admit their wrong doing on 12-16-21 and there after against plaintiff Riley.

13

## VI. Witnesses/Video footage

Defendant's claim that plaintiff never asked for any witnesses. Once again plaintiff ask that this Court draw their own Conclusion on facts that is being argued falsely by defendant's, and to also review the state of mind of these defendants (East, Brown, Rasmussen, Potter, and Hopkins) (See Exhibit 4, pg. 5 in Martinez Report). This was the sole witness (video footage on 12-16-21) these defendant's used in their offensive to Convict plaintiff of two class I offenses. If plaintiff Could use the "Brady" standard of law, when KDOC used exculpatory evidence (not in the presence of plaintiff, because disciplinary officer, plaintiff was not allowed to review video) plaintiff should have that same right to use in his defense. Plaintiff did provide a request to Unit Team Potter, E.A.I. and disciplinary officer to preserve video footage. KDOC policy states, video footage can be preserved for up to 5 yrs. Young v. Lynch, 846 F.2d 960, 963 (4th Cir. 198? ( due process may require production of evidence "when it is the dispositive item of proof, it is Critical to the inmate's defense, it is in the Custod of prison officials, and it Could be produced

14

without impairing institutional concerns".)
It's a fact that all defendant's in his/her
individual capacity on 12-16-21, denied plaintiff
Riley medical attention in which at this present
day, plaintiff still suffers from pain and a injury
that is irrepairable to plaintiff's everyday walking,
running, working out, and standing for a long
period of time. After a full review of all by
this court, plaintiff hopes that all this court
ask of him has been met in accordance in
stating a claim that is plausible enough
proof for this complaint to move forward for
trial.

## VII. Medical

   Plaintiff Riley didn't receive any medical
treatment until Dec. 20th, 2021. On Dec. 16th 2021,
plaintiff's foot was shut in cell door, by defenda
Hopkins. On Dec 16th, 2021, plaintiff requested medica
and defendants supervisor, which was denied by defenda
Hopkins, and later on 12-16-21 also by (East, Brown,
Rasmussen and Potter). On Dec. 17th, a nurse came t
plaintiff's cell in B-S Rm#109 and did sick call

15

of plaintiff Riley's foot. Nurse came to plaintiff cell window and did sick call. Nurse asked through door, "what is wrong with foot," and plaintiff explained his foot was slammed in cell door and needed immediate attention. Nurse told me to put in another sick call. Understand, plaintiff was not examined by nurse, only looked at through cell door. The ace wrap that plaintiff had on foot was not from medical but his personal ace wrap. On 18th and 19th of December, plaintiff was not permitted to go to clinic unless told to even as he complained both days to Unit team potter and unit officer (Both had the authority to escort plaintiff to clinic but both chose not too.) Plaintiff had to suffer for two days of walking on (at the time plaintiff thought foot was fractured. because the nurse who came to cell on the 17th, Dec. 2021, never examined so plaintiff can only tell the court of what he was feeling) swollen foot. On Dec. 20th 2021, plaintiff was called to clinic, but was only called for a x-ray. Still not examined by a nurse or provider, even when asked by plaintiff because of the pain in

16

foot, but was told the only way to be examined I would have to put in another sick call. Understand, this even means medically treated with a crutch or anything until a nurse could see me. On Dec 21st 2021, plaintiff was called to clinic again and was examined by nurse Amber. After being examined by nurse Amber, plaintiff asked could he get a crutch, but was told only a provider has the authority to issue medical equipment, and plaintiff states, "I need medical help right now." Plaintiff asked nurse amber could she at least take a picture of my foot so that plaintiff can have it documented for his paper trail later. Plaintiff was told that Corizon has no authority to take pictures plaintiff would have to go to Captains office for such matter. I explained to nurse Amber I tried already with Captain Brown, Lt. Rasmusse Sort Leader East, and Unit Team Potter, but was denied by any authority staff at Lansing. Nurse Amber walked plaintiff Riley to clinic door an was going to Captain office with plaintiff when Lt. Lee and Sort leader Hoover was walking down sidewalk to Captain office.

17

Plaintiff stopped Lt. Lee and Sort leader Hoover and explained plaintiff's plea for help because no one else will help plaintiff in matter of properly filing grievance in accordance to KDOC policy. Lt. Lee and Sort leader Hoover walked plaintiff outside to Captains office and set plaintiff in a chair and took pictures of plaintiffs foot and plaintiff was told by Sort leader Hoover pictures will be sent to E.A.I. Still plaintiff has not been given crutches or a cain until Dec. 23rd 2021. from Dec. 29th 2021, and until end of March, 2022, plaintiff has put in constent sick calls to nurses and providers about the pain was feeling in foot, and the swelling that was not leaving plaintiff foot. Everytime plaintiff went to medical, plaintiff was told to not worry swelling will go down. On Feb. 11th 2022, plaintiff was given a cain because swelling still wasn't going down. In fact plaintiff requested a cain and provider gave plaintiff cain in place of crutch plaintiff was using. On May 19th 2022, plaintiff was transferred to El Dorado Correctional facility.

18

On June 10th, 2022, plaintiff was called to Clinic for his Chronic Care Appointment with nurse florez here at El Dorado Correctional facility. Plaintiff expressed the pain and burning feeling in foot. Foot has not lost it's swelling in foot. The worst news anyone wants to here and has been a emotional stress on plaintiffs life, Plaintiff was told that he has Stage II Diabetes. Plaintiff was told by nurse florez that medically it can be Controlled, but I have to be more careful of what I eat now, and other factors that will trigger my health in a downward spirrow if I don't treat this serious. Being diagnosed has affected plaintiff so hard that even with taking Rim Ron (Mental health meds), plaintiff as also been dealing with high blood pressure that raises my chronic Care to Serious Concern with plaintiffs every day health condition. Plaintiff has provided here at El Dorado with the best medical attention, that Lansing nurse's and providers, and staff felt plaintiffs health wasn't worthy of when plaintiff was at Lansing Correctional facility. Plaintiff has had treatment by physical therapist in Oct, 2022, and I'll let the Courts decide from his report.

For the rest of my life plaintiff's body, and foot will never be normal again. Plaintiff believes that he suffers from irrepairable nerve damage in left foot. These are injuries that if Lansing would have treated Plaintiff with proper examination maybe plaintiff's injury could have been treated Sooner. It's not a Co-incident that a month after plaintiff's transfer here to El Dorado Correctional facility, that plaintiff finds out that he is a Stage II Diabetic.

Chronic Conditions like diabetes, HIV, AIDS, Hepatit epilepsy, and hypertension are serious medical need for which you deserve medical attention and care. Brown v. Johnson, 387 F.3d 1344(11th Cir. 2004).

Maybe if plaintiff didn't suffer this foot injury that plaintiff might not have been diagnosed Stage II Diabetes.

<u>Foot Injury - Stage II Diabetes/Irrepairable Nerve Damage</u>

To claim objectively there was no wrongdoing to establish
a constitutional violation, defendant's believe plaintiff Riley's
injury doesn't reach the standard. Once again plaintiff ask
that this court understand the state of mind of defendant's
when argueing such a claim. Plaintiff was not grabbed or arm
twisted by defendant Hopkins. Plaintiff was not grabbed around the
neck by defendant Hopkins. Plaintiff was never rammed into a wall
or dragged by defendant Hopkins while walking plaintiff through the
prison. Plaintiff was not shoved into a door frame, nor did defendant
Hopkins dig his nails in plaintiffs arm. Plaintiff was not
bumped, shoved, elbowed or pushed by defendant Hopkins.
Plaintiff did not have cubicle-cell wall pushed on plaintiffs
leg, nor did defendant Hopkins single blow plaintiff in head
while escorting into prison.

What defendant Hopkins did to plaintiff Riley was slam
a 300+lb. cell door on plaintiff foot, not once, not twice,
but three times, wanton to cause bodily harm to plaintiff
Riley on 12-16-21, at 3:15 am in cell house B-5 at Lansing
Correctional Facility.

Merely, which is define as- "Nothing more than" can't be used
on 12-16-21. What plaintiff had to suffer through by
defendant Hopkins, or there after with plaintiffs diagnosis
of Stage II Diabetes, and the realization plaintiff suffers as
well from irrepairable nerve damage to left foot caused
by defendant Hopkins actions and the actions from
the other defendant's (East, Brown, Rasmussen, Potter) for
not allowing plaintiff medical attention. Plaintiff's every day
reminder with doing normal activities (running, walking, or
standing up for long periods of time) was taken from
plaintiff's ability to feel normal again.

## Conclusion

There was a complete breakdown on 12-16-21, of all defendants (East, Brown, Rasmussen, Potter, Hopkins) policy statement when subject to the KDOC's "Code of Ethics." When reported by plaintiff that he was assaulted and batterized with the "wanton" intent to cause bodily harm to plaintiff by defendant Hopkins, not one report was written by any of these defendants (East, Brown, Rasmussen, Potter) to document said matter, so that plaintiff could have to defend at a later date (like now to have for this court to review). All defendant's actions were so unethical, and dishonest that saying their commitment in providing a productive and safe work environment was not considered on 12-16-21 and there after for plaintiff Riley's safety.

There is so many inconsistent facts by defendants that for plaintiff to defend on whats right and whats wrong is evidence enough for this court to allow this case to move forward for discovery. Each defendant admits watching video footage of incident on 12-16-21, so this shows there personal involvement in a act that was so violent and threatening to plaintiff, the only way this court can draw a conclusion is to review the facts on discovery.

22

Plaintiff followed all policies and procedures when filing grievance against defendant Hopkins. Can defendants prove the same if the courts allow this to move to discovery..

It's a fact that plaintiff can prove he did file a injury claim in accordance with KDOC's policy, and it was given to Unit Team Potter to file.

It's a fact that defendant Hopkins did not file disciplinary report in accordance with KDOC's policy. If defendant would have, he knows disciplinary reports are written on computer and time stamped, so that there is no foul play (writing reports illegally). If plaintiff questions this policy, then there should be no problem in allowing the review of video footage on 12-16-21 in B-5 cellhouse, of defendants writing at desk disciplinary, so as not to dispute this act plaintiff is grieving about (retaliation of writing report after defendant here's plaintiff has filed a grievance). Once again this court must review the state of mind by defendants. The question KDOC needs to and have not still, "ask defendant Potter what was her reason she refused to process as plaintiff Unit team, such valuable documents in accordance to KDOC's policy. Williams v. Snyder, 150 Fed. Appx. 549, 2005 U.S. App. LEXIS 21007     23     (7ᵗʰ Cir. 2005),

The unquestioned and serious deprivation of basic human needs plaintiff had to suffer from by defendant Hopkins actions, and of not calling medical or his Supervisor does reach the level of defendant "Subjective" thinking the night of 12-16-21, and any incidents plaintiff reported there after. These are minimal civilized measures of life's necessities that should not have been denied to plaintiff when "EXCESSIVE force" plays a big part in defendant Hopkin actions. Plaintiff ask that this Court allow for this Complaint to move forward for discovery, so that this Court could have a chance to see facts first before making a decision to dismiss Complaint. The defendant's claim that plaintiff has not alleged wrongdoing that is objectively harm to violate a Constitutional violation. Plaintiff feels defendants proved that for him. (Exhibit 9, pg., 1 and Exhibit 9, pg., 2 and Exhibit 9, pg. 3 in Martinez Report). Plaintiff still questions the defendants state of mind, when they didn't allow this Court to review medical records by professional physical therapist and doctors here at El Dorado Correctional facility. Why didn't KDOC add Brown, Rasmussen and Potters declaration in Martinez Report. Once again this Court must draw their own Conclusion and let discovery be this

courts next decision and not dismiss complaint.

Respectfully Submitted,

02/16/23
Date

*Mart A. Riley #52926*
Martin A. Riley #52926
El Dorado Correctional Facility
P.O. Box 311
El Dorado, KS 67042

## Certificate of Service

I hereby certify that on the 16th day of Feb., 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF System, which will send a notice of electronic filing to the following:

Kansas Att. General
120 SW 10th Ave. #2
Topeka, KS 66612

25

I hereby certify that a true and correct copy of the foregoing was sent via intra facility mail on this 16th day of Feb. 2023 to:

Libby Snider, Sc #19457
Legal Counsel
Kansas Dept. of Corrections
714 SW Jackson St., 2nd Floor
Topeka, KS  66603